

**SIGNED this 20th day of October, 2012.**

_____
LEIF M. CLARK
UNITED STATES BANKRUPTCY JUDGE
_____

# United States Bankruptcy Court

Western District of Texas
San Antonio Division

| | |
|---|---|
| *In re* | BANKR. CASE NO. |
| STEPHEN W. BOYD | 11-51797 |
| *Debtor* | |
| JOSE C. RODRIGUEZ, TRUSTEE<br><br>    *Plaintiff,*<br>v.<br><br>STEPHEN W. BOYD, THE LAW OFFICE OF STEPHEN W. BOYD & ASSOCIATES, PLLC AND FOUR DOMINION DRIVE, LLC<br><br>    *Defendants.* | ADV. NO. 12-05108 |

**MEMORANDUM DECISION DENYING MOTION TO DISMISS**

The Trustee seeks substantive consolidation of the individual Stephen W. Boyd and the Law Office of Stephen W. Boyd & Associates, PLLC, dating back to the time of the original bankruptcy filing.

1

I. *Background Facts*

The underlying facts include the following:

The Debtor, Stephen W. Boyd ("Boyd) filed for bankruptcy protection under chapter 7 on May 24, 2011. The Law Office of Stephen W. Boyd & Associates, PLLC ("the Law Firm") is entirely owned and operated by Boyd, but has not filed for bankruptcy protection.

Much of this case revolves around the actions Boyd took to divert funds from Elbee Investments, Inc. ("Elbee") and Leo Block to a variety of Boyd's personal accounts or into companies Boyd owned or operated, such as Medlaw Services LLC or the Law Firm. The court notes several transactions as they pertain to the relationship between Boyd and the Law Firm, specifically, Boyd authorized Elbee to extend a 2 million dollar line of credit to Medlaw, which was then diverted to finance cases for the Law Firm in addition to several transactions funneling money from Elbee to Medlaw and to the Law firm. The Trustee's complaint also alleged a heavy comingling of funds between Boyd and the Law Firm, with Boyd writing checks from the Law Firm to his ex-wife, to personal bank accounts, to personal bankruptcy lawyers, and checks to his current wife.

On January 25, 2011, trial commenced in state court where Boyd, and co-defendant Medlaw Services, LLC, had been sued by Elbee "Elbee" and Erma Block as Independent Executrix of the Estate of Leo L. Block, ("Block") for breach of fiduciary duty, conspiracy, fraud, conversion, disgorgement, and exemplary damages. Eventually, after removal, remands, and a mistrial, the jury returned a verdict against Boyd for fraud, breach of fiduciary duty as an attorney, breach of fiduciary duty as a corporate director, fraud in a real estate or stock transaction, and misapplication of fiduciary property. The verdict delivered a judgment awarding damages in excess of 9.4 million dollars on in July of 2012.

Just nine days after trial commenced, the Law Firm assigned an interest in an attorney fee for *American Medical Associations v. United Health Care* (Cause No. 00-CV-2800 in the United States District Court for the Southern District of Texas). The assignment conveyed to the Law Firm's landlord, Four Dominion Drive, LLC ("FDD"), an interest "in an amount equal to the unpaid rent along with the late fees and/or interest as of the date the Assignor receives his fee from the settlement proceeds of the case."

Asserting that the Law Firm is an alter-ego of Boyd, the Trustee argues the three main creditors, Elbee Investments, Inc., Erma Block, Independent Executrix of the Estate of Leo L. Block, and Four Dominion Drive, LLC, would be best served by substantive consolidation, as consolidation provides an appropriate solution to ensure equitable treatment of the three creditors. Concurrently, the Trustee has filed a sister action to declare the assignment of the Law Firm to FDD void as a fraudulent transfer and claim the fees recovered as property of the Boyd bankruptcy estate.

II.   *Summary of FDD's The Motion to Dismiss*

FDD maintains this court lacks the authority to hear the dispute, and should be dismissed under Rule 12(b)(1). FDD argues the claims asserted constitute non-core proceedings under 28 U.S.C. § 157(b)(3) and that the Supreme Court's decision in *Stern v. Marshall* limits this court's authority to hear such claims, as they "concern FDD's rights and related obligations owned by the non-debtor Law Firm, and assets of the non-debtor Law Firm, not part of the Boyd bankruptcy estate."

Second, FDD argues the case should be dismissed for lack of standing for two reasons. First, because the claims brought by the Trustee are unique personal claims belonging to Block/Elbee. And second, the Trustee's standing has been foreclosed because the creditors have already received a final judgment and the Trustee previously acquiesced to the bankruptcy court's lift of stay to allow the commencement of the state court trial.

Third, FDD asserts the Trustee's claims must be dismissed for failure to state a claim upon which relief may be granted based on the facts of the case.

Fourth, FDD alleges that the Trustee has failed to join all necessary parties to the action.

Fifth, FDD maintains the Trustee has an irreconcilable conflict barring the right to assert a claim on behalf of the Boyd estate against FDD, as Trustee is in possession and control over the stock or membership interest in the Law Firm, and thus the Trustee owes duties and responsibilities to the creditors of the law firm.

Finally, FDD alleges the Trustee's claims are barred under the principle of *in pari delicto*, as the Trustee may not bring a case standing in Boyd's shoes, as the initiating facilitator of the alleged wrongful acts and as perpetrator of wrongful conduct as alleged within the Complaint is barred by the equitable doctrine.

In the alternative, FDD asserts the Complaint is vague and ambiguous and moves for a more definite statement.

III.   *Discussion*

The court has ruled on most of the matters raised in this motion in the related adversary proceeding, Adv. No. 12-5107. The court will not repeat those principles here. The parties are directed to the ruling on the motion to dismiss filed by FDD in that case for the court/s reasoning. The motion to dismiss under Rule 12(b)(1) on *Stern* grounds is denied. The motion to dismiss on subject matter jurisdiction grounds is addressed as follows:

Bankruptcy jurisdiction "is grounded in, and limited by, statute." *Celotex Corp. v. Edwards*, 514 U.S. 300, 307 (1995); *In re Wilborn*, 609 F.3d 748 (5th Cir. 2010). Federal district courts "have original jurisdiction but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or

3

related to cases under title 11." 28 U.S.C. § 1334(b). There are thus three types of bankruptcy jurisdiction: "arising under," "arising in," and "related to" jurisdiction. *See Stern v. Marshall*, 131 S. Ct. 2594, 2620, 180 L.Ed.2d 475 (2011). "Arising under" jurisdiction encompasses claims created by Title 11, such as an avoidance claim under 11 U.S.C. § 544(b). *See, e.g., Carlton v. BAWW, Inc.*, 751 F.2d 781 (5th Cir. 1985). "Arising in" jurisdiction pertains to matters that could only arise in a case under Title 11. *In re Wilborn*, 609 F.3d 748, 752 (5th Cir. 2010). "Related to" jurisdiction exists when "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *In re Wood*, 825 F.2d 90, 93 (5th Cir. 1987) (citing *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3rd Cir. 1984)).[1] 28 U.S.C. Section 157(a) permits a district court to refer "any and all proceedings arising under title 11 or arising in or related to a case under title 11" to the bankruptcy judges within the district. Section 157(a) distinguishes core and non-core cases, providing that bankruptcy courts may 'hear and determine' core cases, but noting that bankruptcy courts may only submit findings of fact and conclusions of law to the district court in non-core cases. *See* 28 U.S.C. § 157(b), (c).

Defendants allege substantive consolidation is not a "core" claim because it does not invoke substantive bankruptcy rights and does not arise under the subject matter jurisdiction of the bankruptcy court. Substantive consolidation is a bankruptcy procedure that that redefines multiple bankruptcy estates into a single bankruptcy estate. *In re Hemingway Transp., Inc.*, 954 F.2d 1, 11-12 (1st Cir. 1992). Substantive consolidation stems from a bankruptcy court's equitable powers and is a remedy unique to bankruptcy, and indeed, does not exist outside of it. *E.g., In re Ionica PLC*, 241 B.R. 829, 834 (Bankr. S.D.N.Y. 1999); *In re Patel*, 291 B.R. 169, 174 (Bankr. D. Ariz. 2003); *In re Murray Industries, Inc.*, 119 B.R. 820, 829-30 (Bankr. M.D. Fla. 1990). The Supreme Court first discussed and adopted substantive consolidation in *Sampsell v. Imperial Paper & Color Corp.*, 313 U.S. 215, 217 (1941). There, a debtor incurred $104,000 worth of debt while operating his unincorporated business. *Id.* at 215. The debtor then created a corporation, sold all his goods in exchange for stock, leased the old business's office space to the corporation, and then was adjudged voluntary bankrupt two years later as an individual. *Id.* at 215-16. The Trustee, recognizing that the corporation was not in bankruptcy but had received assets from the debtor, petitioned the court to bring the corporation's assets into the bankruptcy estate. *Id.* at 216. The bankruptcy referee found that the corporation was merely an instrument to put the debtor's assets beyond the reach of creditors and ordered that "the property of the corporation *was* property of the bankrupt estate and that it be administered for the benefit of the creditors of the estate." *Id.* at 217. The Supreme Court eventually found that the corporation, although legally a separate individual entity, was in reality no more than a puppet controlled by the debtor. *Id.* The Court found that consolidation occurs "where the transfer

---

[1] The Supreme Court cites both *Pacor* and *Wood* favorably. *Celotex Corp. v. Edwards,* 514 U.S. 300, 308 n. 6, 115 S. Ct. 1493, 131 L.Ed.2d 403 (1995).

[of assets] was fraudulent or where the relationship between the stockholder and the corporation was such as to justify the use of summary proceedings to absorb the corporate assets into the bankruptcy estate of the stockholder." *Id*. at 219. In conclusion, considering the historical origins and unique bankruptcy application, substantial consolidation is assuredly a "proceeding that, by its nature, could arise only in the context of a bankruptcy case." *United States Brass Corp. v. Travelers Ins. Group, Inc. (In re United States Brass Corp.)*, 301 F.3d 296, 304 (5th Cir. 2002).

Additionally, Defendants allege substantive consolidation is not core because the claims only involve assets, rights, and property of a non-debtor. Thus, Defendants argue, substantive consolidation is improper here because it would consolidate a debtor and non-debtor. However, some courts have granted motions to substantially consolidate debtors with non-debtors, relying on § 105 of the Bankruptcy Code as authority to do so. *See, e.g., In re Bonham*, 229 F.3d 750 , 765 (9th Cir. 2000). Further, substantive consolidation is a remedy alive and well in the Fifth Circuit. *In re Bass*, 2011 WL 722384, at *11 (Bankr. W.D. Tex. 2011); *see also In re Introgen Therapeutics, Inc.*, 429 B.R. 570 (Bankr. W.D. Tex. 2010). In *In re Bass*, the court was presented with a substantive consolidation of a debtor with two entities alleged to be alter-egos of the Debtor, and found substantive consolidation was appropriate in circumstances where the facts warranted it for the sake of equity. 2011 WL 722384, at *11; *see also, e.g., In re Permian Producers Drilling, Inc.,* 263 B.R. 510, 515–17 (W.D. Tex. 2000) (discussing substantive consolidation between a debtor and alter ego corporations); *In re E'Lite Eyewear Holding, Inc.,* 2009 WL 349832 at *3 (Bankr. E.D.Tex. 2009) (discussing how the courts are divided on whether to allow consolidation of a debtor with a nondebtor, but determining that it is allowed, just with more caution than with a substantive consolidation between two debtors). The main rationale behind applying substantive consolidation to certain cases is to promote equity. *In re Owens Corning*, 419 F.3d 195, 216 (3d Cir. 2005) (concluding that "substantive consolidation at its core is equity").

With that principle in mind, if the Trustee's claims of alter-ego and reverse piercing stand as pled, Boyd and the Law Firm would exist as a single entity. In essence, by piercing (or reverse-piercing) the corporate veil, the party establishes that the two entities are legally the same, not two different entities. Therefore, they are not really debtor and non-debtor, but simply one debtor. *See In re Pearlman*, 462 B.R. 849, 855 (Bankr. M.D. Fla. 2012). Any assets, property, transfer, or fraudulent action made by the Law Firm would be attributable to Boyd (and vice versa). To deny substantive consolidation of an alter-ego would in fact deny equity in handling the bankruptcy estate, as the debtor's improper use of the Law Firm could shield creditors from assets they would otherwise be entitled to receive.

Still, the court is not convinced that substantive consolidation is core when the target entity is not in bankruptcy. For this reason, the court concludes that the action is within the court's related to jurisdiction but is not core.

5

The court rejects the defendant's challenge to the alter ego and reverse veil piercing actions, for the reasons stated in the decision in Adv. Proc. No. 12-5107. The court similarly rejects the standing argument.

The defendant argues that the substantive consolidation claim should be dismissed for failure to state a claim. As discussed above, substantive consolidation is a remedy alive and well in the Fifth Circuit. *In re Bass*, 2011 WL 722384, at *11 (Bankr. W.D. Tex. 2011); *see also In re Introgen Therapeutics, Inc.*, 429 B.R. 570 (Bankr. W.D. Tex. 2010). Even among debtors and non-debtors, substantive consolidation is appropriate in circumstances where the facts warranted it for the sake of equity. 2011 WL 722384, at *11; *see also, e.g., In re Permian Producers Drilling, Inc.,* 263 B.R. 510, 515–17 (W.D. Tex. 2000) (discussing substantive consolidation between a debtor and alter ego corporations); *In re E'Lite Eyewear Holding, Inc.,* 2009 WL 349832 at *3 (Bankr. E.D.Tex. 2009) (discussing how the courts are divided on whether to allow consolidation of a debtor with a nondebtor, but determining that it is allowed, just with more caution than with a substantive consolidation between two debtors). The main rationale behind applying substantive consolidation to certain cases is to promote equity. *In re Owens Corning*, 419 F.3d 195, 216 (3d Cir. 2005) (concluding that "substantive consolidation at its core is equity"). The Trustee's complaint sets forth facts sufficient to bring his complaint within the legal standards of a substantive consolidation sufficient to raise the right to the relief above mere speculation. Those allegations include: the actions Boyd took to divert funds from Elbee Investments, Inc. ("Elbee") and Leo Block to a variety of Boyd's personal accounts or into the Law Firm. The complaint set forth several transactions between Boyd and the Law Firm, specifically, Boyd authorized Elbee to extend a 2 million dollar line of credit to Medlaw, which was then diverted to finance cases for the Law Firm in addition to several transactions funneling money from Elbee to Medlaw and to the Law firm. The Trustee's complaint also alleged a heavy comingling of funds between Boyd and the Law Firm, with Boyd writing checks from the Law Firm to his ex-wife, to personal bank accounts, to personal bankruptcy lawyers, and checks to his current wife. Accepting the facts set out regarding as true, the Trustee has pled a claim upon which relief may be granted.

Next, the defendant says that the trustee has failed to join necessary parties. Federal Rule of Civil Procedure 19, incorporated by Federal Rule of Bankruptcy Procedure 7019, requires a Court to undertake a two-step analysis when this challenge is raised. A court must first determine under Rule 19(a) whether the party is required to the suit and must therefore be joined if joinder is feasible. If the absent party is required but cannot be joined, the court must then determine under Rule 19(b) whether the party is indispensable. If so, the suit must be dismissed. *See Brown v. Pacific Life Ins. Co.,*, 462 F.3d 384, 394 (5th Cir. 2006); *Pulitzer-Polster v. Pulitzer*, 784 F.2d 1305, 1309 (5th Cir. 1986) (nothing a Rule 19 inquiry is "highly practical" and "fact-based"). Rule 19 is typically addressed in the context of a motion to

dismiss, and the movant must show "that there is at least one party: (1) who should be joined if feasible (a necessary party), (2) whose joinder is not feasible, and (3) in whose absence the action cannot proceed in equity and good conscience (an indispensable party)." *James v. Valvoline, Inc.,* 159 F.Supp.2d 544, 550 (S.D.Tex. 2001); *see also Temple v. Synthes Corp.,* 498 U.S. 5, 8, 111 S. Ct. 315, 112 L.Ed.2d 263 (1990) ("[N]o inquiry under Rule 19(b) is necessary [where] the threshold requirements of Rule 19(a) have not been satisfied."). The movant bears the burden of proving each element, namely necessity, unavailability, and indispensability. *See James,* 159 F.Supp.2d at 550 (citing *Nottingham v. Gen. Am. Commc'ns Corp.,* 811 F.2d 873, 880 (5th Cir. 1987)). FDD fails to set forth the identity of any parties that are necessary, unavailable, and indispensable to the proceedings, failing to meet the necessary burden for dismissal.

FDD asserts that the Trustee has an irreconcilable conflict. The ruing on that contention is the same as it was in Av. Proc. 12-5107, and is supported by the reasoning set out in that decision. The court similarly rejects the *in pari delicto* defense, for reasons set out in the other memorandum decision.

**IV.** *Conclusion*

For the reasons stated above, the court DENIES the Motion to Dismiss on the grounds of 12(b)(1), the lack of standing, conflict of interest, *in pari delicto*, and for failure to state a claim of actual fraud.

####